UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

_____

In re:
    Gregory Ladieu,
        Debtor

_____

**Rentrak Corporation,**
        Plaintiff,
    v.

**Gregory Ladieu,**
        Defendant.

_____

Chapter 7 Case
# 07-10868

Filed & Entered
On Docket
June 17, 2011

Adversary Proceeding
# 08-1010

## ORDER
### REGARDING VIOLATION OF THE AUTOMATIC STAY

In the Court's Order (doc. # 66) entered in conjunction with its Memorandum on Cross-Motions for Summary Judgment (doc. # 65), the Court declared that "the judgment obtained in Oregon state court by Rentrak against Galadieu Enterprises LLC ("Galadieu") is void ab initio as having been obtained in violation of the automatic stay." At a pre-trial conference held on June 2, 2011, Plaintiff's attorney requested the opportunity to submit a brief regarding the violation of the stay issue. The Court granted this request and the Plaintiff and Defendant each subsequently filed a memorandum of law (doc. # 86 and 90, respectively).

The chronology of events in Rentrak's state court lawsuit against Galadieu and the Defendant's bankruptcy case are the critical starting point for this analysis. The Defendant filed a petition for relief under chapter 7 of Title 11 United States Code (the "Bankruptcy Code") on December 27, 2007. The Plaintiff filed the instant adversary proceeding on June 2, 2008 (doc. # 1), and six months later, on September 23, 2008 , the Plaintiff commenced a suit against Galadieu, in the Oregon state court (doc. # 59, Ex. A). The Plaintiff obtained a money judgment, on a default basis, on November 5, 2008 (doc. # 35-3, Ex. I). The Defendant, as sole and managing member of Galadieu, belatedly filed an answer on behalf of Galadieu on November 17, 2008 (doc. # 59 Ex. B). The Plaintiff filed a motion for summary judgment in this adversary proceeding on March 16, 2009, in which it relied upon this Oregon state court judgment as a basis for relief in this Court (doc. # 35). Given this chronology of events in the two cases, and the potential significance of the judgment on the parties' rights in the instant proceeding, the Court raised the violation of automatic stay issue sua sponte in its summary judgment decision.

1

### *The Automatic Stay of 11 U.S.C. § 362*

The automatic stay arises by virtue of 11 U.S.C. § 362(a) and "stays the commencement or continuation of virtually all proceedings against a debtor that were or could have been commenced before the debtor filed for bankruptcy." Sensenich v. Ledyard Nat'l Bank (In re Campbell), 398 B.R. 799, 808 (Bankr. D. Vt. 2008). Included in the actions stayed by this provision is "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under [the Code]." 11 U.S.C. § 362(a)(6). The stay is "'effective at the moment the petition is filed and defendant's knowledge is immaterial to a determination of whether the stay was violated.'" Salem v. Paroli, 260 B.R. 246, 256 (Bankr. S.D.N.Y. 2001) (quoting Siskin v. Complete Aircraft Servs., Inc. (In re Siskin), 231 B.R. 514, 517 (Bankr. E.D.N.Y. 1999). Actions taken in violation of the automatic stay are void ab initio. In re Braught, 307 B.R. 399, 404 (Bankr. S.D.N.Y. 2004).

The Second Circuit set forth the applicable standard for determining whether a violation of § 362's automatic stay has occurred in Crysen/Montenay Energy Co. v. Esselen Assoc., Inc. (In re Crysen/Montenay Energy Co.), 902 F.2d 1098, 1105 (2d Cir. 1990). As stated by the Second Circuit:

> [A]ny deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages. An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 U.S.C. § 362(h) [now § 362(k)]. This standard encourages would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of the automatic stay, and thereby protects the debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations.

Id. The creditor's knowledge of the bankruptcy petition "affect[s] the determination of whether an alleged violation of the automatic stay was willful." In re Siskin, 231 B.R. at 517. "So long as a creditor intended to take the action that constituted a stay violation, its intention or lack thereof to violate the stay is irrelevant." In re Braught, 307 B.R. at 403. "Not even a good faith mistake of law or a legitimate dispute as to legal rights relieve a willful violator of the consequences of his act." In re Sullivan, 367 B.R. 54, 62 (Bankr. N.D.N.Y. 2007) (citation omitted); In re Campbell, 398 B.R. at 811-12. There can be no doubt that a creditor acts at its own peril when it takes actions that may be in violation of the stay and that the prudent course of action is for a creditor to seek judicial clarification regarding the scope of the stay whenever there is a reasonable possibility that the stay might apply.

The particular question presented here is whether a creditor has violated the stay protecting a debtor if it takes action to collect the debt against a non-debtor party who is closely related to the debtor and guaranteed the debt which is the subject of the collection action. The automatic stay ordinarily does not apply to non-debtor co-obligors or co-defendants. Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287

2

(2d Cir. 2003) (citations omitted). The Second Circuit has addressed this question and held that "the automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence on the debtor's estate." Id. It articulated a list of actions where a claim will have the requisite immediate adverse economic consequence on the debtor's estate to warrant extension of the stay to non-debtors:

> Examples are a claim to establish an obligation of which the debtor is a guarantor, McCartney v. Integra National Bank North, 106 F.3d 506, 510-11 (3d Cir. 1997), a claim against the debtor's insurer, Johns-Manville Corp. v. Asbestos Litigation Group (In re Johns-Manville Corp.), 26 B.R. 420, 435-36 (Bankr. S.D.N.Y. 1983) (on rehearing), and actions where "there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant . . .," A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986).

Id, at 287-88.

***The Automatic Stay Extended to Galadieu under the Second Circuit's Queenie decision***

Here, the Court found that the automatic stay applied to Galadieu under the first and third examples recited in Queenie. There is no question that the first applies here, as it is Ladieu's role as guarantor that underlies Rentrak's suit. Likewise, the third example also applies as Ladieu is the sole member of Galadieu. Under the Queenie standard, this creates an identity between Ladieu and Galadieu such that a judgment in favor of Rentrak against Galadieu, based upon a default under the parties' contract, would be a judgment Rentrak could enforce against Ladieu and tantamount to a judgment against Ladieu. Queenie, 321 F.3d at 288 (applying the stay to a non-debtor corporation wholly owned by the debtor because adjudication of a claim against the non-debtor corporation would have an immediate adverse economic impact on the debtor); McCartney v. Integra Nat'l Bank North, 106 F.3d 506, 510-511 (3d Cir. 1997) (finding that where a debtor-guarantor would be secondarily liable for any deficiency entered against a non-debtor corporation and the non-debtor corporation had no assets, any action on the deficiency judgment against the non-debtor corporation would have been against the debtor-guarantor as the real party in interest and any deficiency judgment entered against the non-debtor corporation would operate as a judgment or finding against the debtor-guarantor, which is "an outcome clearly in tension with the purposes of the automatic stay."); The Robert Plan Corp. v. Liberty Mut. Corp., No. 09-CV-1930 (JS), Bankr. Case No. 09-08027, 2010 WL 1193151, at *3, 2010 U.S. Dist. LEXIS 27200, at *8-9 (Bankr. E.D.N.Y. March 23, 2010) (extending the stay to non-debtor officers of a debtor-corporation where the debtor-corporation would be liable to indemnify the non-debtor officers if they lost a contempt suit). In light of the foregoing, the automatic stay extended to Galadieu and the Oregon Judgment was void ab initio.

In its recent memorandum of law, the Plaintiff observes that the case law is unsettled both as to whether the automatic stay may be extended to a non-debtor third party and whether the arguments for extending the stay to non-debtor third parties apply at all in chapter 7 cases. Plaintiff also argues that actions taken against Galadieu in state court do not have any effect on the debtor's liquidation case or the related adversary proceeding. Finally, Plaintiff asserts that any determination of liability on the part of the Defendant would be capped in the amount established by this Court, thereby preventing Rentrak from satisfying any deficiency judgment against Galadieu from assets of the Defendant.

The Plaintiff is correct that case law is unsettled across the Circuits on the issue of when the automatic stay may be extended to a non-debtor co-obligor or co-defendant.[1] The unsettled nature of the law is due in part to the courts' attempts to apply the standards for extending the stay to unique fact patterns which must take into the account the debtor's relationship to the non-debtor third party, the nature of the action (e.g. a seizure of property) or claim asserted against the non-debtor third party, and how the successful completion of an action or prosecution of a claim will affect the debtor's estate. This is a case by case analysis. However, Plaintiff's awareness of this lack of certainty with respect to the question is precisely what should have raised a red flag. When the Plaintiff chose to commence a lawsuit against Galadieu in Oregon state court, knowing that Galadieu's sole member - and the guarantor of its debt - was in bankruptcy, and apparently aware of the law on the question of whether this suit might violate the bankruptcy stay imposed by Ladieu's bankruptcy filing, it did so at its own peril. The undisputed facts reflect that Rentrak commenced the Oregon state court action against Galadieu with the knowledge that its sole member, Ladieu, had filed a bankruptcy petition.

Moreover, it appears that Rentrak pursued this action specifically to establish the company's liability and fix the amount of damages, for the purpose of enforcing that judgment against Ladieu, in this adversary proceeding. In its motion for summary judgment, the Plaintiff argued that "[i]n a parallel proceeding brought in the State of Oregon, Rentrak has obtained judgment against Galadieu for $46,547.28 relative to its breach of the Agreement. . . . As a guarantor of the Agreement, Mr. Ladieu is personally liable to Rentrak for the judgment amount." (doc. # 35). Revisiting the issue in supplemental briefing, the Plaintiff elaborated:

> Mr. Ladieu, as the sole member and guarantor for [Galadieu], admits that he
> was on notice of the lawsuit against [Galadieu] in Oregon, but that he could

---

[1] Contrary to the Plaintiff's arguments, it is immaterial to the case at bar that the Ninth Circuit has declined to follow A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994 (4th Cir. 1986) and has not considered Queenie for two reasons. First, the issue of the extension of the automatic stay is before this Court in a bankruptcy petition filed in the District of Vermont and therefore the controlling precedent is that of the Second Circuit. Second, Queenie cited Robins only as support for the last of three examples of a situation under which extension of the automatic stay may be warranted because a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate. The Court found the stay extended to Galadieu under both the first and third examples.

4

> not afford to defend the action. . . . Further, there is no dispute that, as the guarantor of [Galadieu's] debt, Mr. Ladieu was in privity with [Galadieu] for purposes of the application of res judicata. Finally, there is no dispute that Rentrak sought identical relief from [Galadieu] in the Oregon action that it now seeks against Mr. Ladieu as the guarantor of [Galadieu's debt], namely the amount of the indebtedness owed by [Galadieu] to Rentrak for breach of the Agreement. Furthermore, there is no dispute that, as [Galadieu's] guarantor, Mr. Ladieu is fully and completely liable for the debt of [Galadieu] as established by the Oregon judgment. Accordingly, the amount of damages established in the Oregon action is undisputed and is the conclusive measure of damages relative to his obligations as guarantor under the Agreement.

(doc. # 39). There is no equivocation in these statements by the Plaintiff or its intention to use the Oregon state court judgment against the Defendant, based upon the Defendant's guaranty. This is precisely the situation Queenie addressed in its first example for extending the stay – a claim against a non-debtor for a debt on which the debtor is the guarantor.

Subsequent to the Court's finding that the Plaintiff's actions were in violation of the automatic stay, the Plaintiff submits the following description of the import of the Oregon state court judgment:

> None of the actions taken against [Galadieu] in state court have any effect on the debtor's liquidation. At best, the action taken in Oregon establishes the claim against [Galadieu]. Therefore, the judgment taken against [Galadieu] in Oregon has no impact on either the bankruptcy proceeding or the adversary proceeding here under 11 U.S.C. § 523. This Court has full authority to adjudicate the extent of Ladieu's liability and damages under the guaranty. To the extent the Court determines that Ladieu's liability under the guaranty is nondischargeable, the Court also has authority to determine the amount of damages. To the extent those damages are insufficient to satisfy the judgment against [Galadieu], Ladieu's liability under the guaranty would be capped at the amount established by the Court, and Rentrak would be required to seek recovery from sources other than Ladieu.

(doc. # 86) (emphasis added). This position is clearly at odds with Plaintiff's earlier arguments, and suggests that the Plaintiff may be trying to distance itself from statements that suggest its previous strategy was to sue Galadieu in state court specifically in order to establish damages it could enforce against Ladieu in this adversary proceeding.

Based upon the foregoing Second Circuit case law regarding the contours and scope of the automatic stay with respect to non-debtor parties, the Court affirms its decision that Rentrak's Oregon state court judgment was obtained in violation of the automatic stay and is void ab initio. Accordingly, the Court declines to restore validity to Rentrak's Oregon state court judgment against Galadieu.

*No Determination as to Damages for the Stay Violation at this Time*

The Court makes no findings at this time as to whether the Defendant is entitled to an award of damages based upon this finding of a stay violation.

The Defendant has the burden of proving actual damages and whether additional grounds exist for the imposition of punitive damages, pursuant to 11 U.S.C. § 362(k).  Malicki v. Bernstein, 447 B.R. 684, 704-05 (Bankr. D. Conn. 2011).  The issue of damages will be determined based upon the evidence to be presented at the trial.

SO ORDERED.

_____

June 17, 2011                                       Colleen A. Brown
Burlington, Vermont                      United States Bankruptcy Judge